LAW OFFICES

# MURPHY & PRICE, LLP

1125 WEST STREET
SUITE 200
ANNAPOLIS, MD 21401
-----
410-280-2500

J. DENNIS MURPHY, JR.

WARREN D. PRICE

http://www.murphypricelaw.com

May 4, 2021

The Honorable Paula Xinis
United States District Judge
6500 Cherrywood Lane
Greenbelt, MD 20770

   Re: *United States v. Olayinka Wahab*
     Case No.: 8:20CR00445-001-PX

Dear Judge Xinis:

  Attached is the defense sentencing memorandum for the above referenced case. Please excuse that I did not file a formal objection with Probation to the Presentence Report regarding the proposed 2B1.1 enhancement. For some reason, I have not been receiving electronic notifications from the Court clerk's office even though my appearance has been filed in the case. I am hoping that this technical issue will soon be resolved. The Government has agreed to copy me separately on their Memorandum and Motion for Forfeiture to be sure that I have copies.

  I have been in regular discussions with counsel for the Government in recent weeks and moths regarding this case and they have been aware since the time of the plea letter of our continuing disagreement with the suggested 2B1.1 offense level enhancement as well as any order of Restitution in the case for the reasons set forth in our memorandum. There has therefore been no prejudice to the Government regarding the lack of formal objection through Probation.

  Thank you for your consideration in this matter.

              Very respectfully yours,

              _____/s/_____
              J. Dennis Murphy, Jr.

Cc: Government Counsel

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | |
| OLAYINKA WAHAB | * | Case No.: 8:20CR00445-001-PX |
| Defendant | * | |

* * * * *

<u>DEFENDANT'S SENTENCING MEMORANDUM</u>

Defendant, Olayinka Wahab, through undersigned counsel, respectfully submits this Memorandum for this Honorable Court's consideration in aid of sentencing. Defendant respectfully requests that the Court consider a sentence to probation with an appropriate period of home confinement in this case. For the reasons set forth below, Defendant submits that a sentence to probation with a period of home confinement would be sufficient, but not greater than necessary, to comply with the sentencing purposes set forth in 18 U.S.C. § 3553(a).

I. INTRODUCTION

Defendant, Olayinka Wahab, is a longtime resident of Prince George's County, Maryland where he resides with his wife and their two young children ages 6 and 2. Consistent with his overall character, he has no prior criminal history.

1

Defendant has always maintained full time employment to meet his ordinary living expenses. In 2009, his father, who lived in Nigeria, became ill with cancer and was in need of medication and medical treatment which required more money than he was making at the time. He decided to look for part time work and was introduced to the business of selling various types of retail merchandise online primarily through Ebay as a source of extra income. Initially, most of the items he sold were items such as relatively inexpensive electronics such as stereo headsets that had been discontinued by retailers that could be resold for a small profit. Defendant would withdraw money from this part time source of income and Western Union the funds to his father in Nigeria so that he could pay for his medication and treatment. It is noteworthy that Defendant continued to drive an older model car and made no significant purchases for himself with the funds from the DVD sales.

At the time, it was typical for Ebay to send its customers electronic flyers identifying items of merchandise that were in high demand for resale on Ebay. At some point in the 2009 timeframe, Mr. Wahab received an electronic mailing from Ebay explaining that DVD movies were among the highest items requested from retail customers. After checking into it, he

realized that the products would work well for the part time business model which he had initially set up for the electronics sales. In 2009, he began purchasing various outdated DVD movies in bulk from a Chinese company online and then reselling them directly to other persons on Ebay for a small profit. Although Mr. Wahab had a relatively unsophisticated understanding of American copyright law, he knew that the sellers of the DVDs he was buying from China likely did not have permission to do so from the companies who produced these movies.

In 2011, his Dad's cancer illness progressed to the point that it was deemed terminal and the medication and treatments were no longer needed. Defendant therefore no longer had any real need for the additional income from the DVD sales so he stopped doing it.

In late 2013, his sister in Nigeria unfortunately also became ill with cancer and was requesting financial help for medical care above his income from his full time job. The easiest way for him to generate some additional income to help her was to resume the DVD sales which he did in the 2014 time frame. He then began to send money back to Nigeria to help with his sister's medical care. The business over the next several years actually generated slightly more income than was needed to

help his sister who passed away from cancer in 2019. When the Government's investigation in this case closed down the sales in 2018, there was actually more than $20,000.00 in the business account which of course was seized. He also paid for some IT classes with some of the money, which actually led to the job with the IRS, and would also purchase various items at times for his children, but for the most part, he made no significant purchases for himself which defense counsel submits is reflective of his character.

Exhibit 1 to the Government's Motion for Forfeiture, which was graciously provided to the defense in discovery, is a summary of Defendant's various DVD sales over time. It shows the total number of DVDs sold, the total revenues over the almost 10 year period involved and the estimated retail value of those items. From these figures, it can be calculated that Mr. Wahab received an average price of about $13.00 per DVD. The cost to him per DVD from the Chinese company averaged about $3.50 and his shipping cost to mail them to his customers averaged about $3.00 per dvd. The Ebay and Paypal charges averaged about $2.50 per DVD. Thus, the profit per DVD roughly averaged over time is about $5.00 per DVD. The total number of DVDs sold over the relevant 9 or so year time period averages to about 5 DVDs per

day. The bottom line is that this activity earned him approximately $25.00 per day in part time additional income.

Mr. Wahab had the good fortune to meet his wife in 2014. They married in 2015 and are blessed with 2 beautiful children ages 6 and 2. Defense counsel has included a family photo from last Christmas as Exhibit A. The loss of his job with the IRS resulting from the charges in this case as well as the worry regarding possible imprisonment has caused considerable stress and anxiety.

For the reasons set forth below, we respectfully submit that a sentence to probation is sufficient to comply with the purposes of the 18 U.S.C. § 3553 (a) under the totality of the circumstances in this case.

II. STATUTORY SENTENCING FACTORS

18 U.S.C. § 3553 sets forth the factors which the Court must consider in determining an appropriate sentence. Section 3553 (a) provides that the Court should impose a sentence sufficient, but not greater than necessary, to comply with the purposes of paragraph (2) thereof. For the reasons set forth, Mr. Wahab respectfully submits that a sentence to probation with home confinement would be sufficient to comply with those stated purposes. Mr. Wahab respectfully addresses the statutory factors

as follows:

1. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

A. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

It is clear from the factual stipulation of the plea letter, as well as the Presentence Report, that the offense involved a very small part time enterprise to sell dated dvd movies on Ebay without the express permission of the copyright holders of the movies. It is also clear that he had only a vague understanding of the exact nature of the illegality involved. He is a naturalized U.S. citizen from Nigeria and does not have a sophisticated understanding of American copyright law. It is therefore clear that the criminal intent involved is more in the nature of willful blindness than a conscious act of harm to the copyright holders of these dated DVD movies.

This vagueness of understanding is understandable given that even the federal agents investigating the case asked Mr. Wahab if he suspected or knew that the dvds were "counterfeit" to which he answered in the affirmative. The term "counterfeit" is of course the term used to refer to a violation of trademark law as opposed to copyright law, violations of which are generally referred to as "piracy" or "pirated" merchandise. The point is that even the federal agents investigating the case

were confused about the exact nature of the criminal wrongdoing from Defendant's conduct and it is obvious that Mr. Wahab had only a vague understanding that his conduct was likely technically illegal in some way given the source of the DVDs were from China. It is therefore arguably not the most egregious misbehavior which comes before our federal courts in terms of scienter.

It is also clear that the offense conduct generated a very small amount of additional money per day (approximately $25.00 per day after expenses) which of course added up over time. Although Mr. Wahab concedes that the conduct was criminal, and caused at least some degree of harm to the copyright holders, he believes that the actual degree of financial loss to them is wholly exaggerated by the Government's attempt to use the typical Retail Price (MSRP) as the means of calculating their financial loss under the circumstances of this case. The defense maintains that this is true for both the Sentencing Guideline's offense level computation as well as the Government's request for a Restitution Order. Given his limited financial means at this point in time, the calculation of loss may largely be academic given that his practical ability to repay restitution is very limited which is often the situation in these cases.

However, Defendant believes that it is important that the Court assess the loss in a more realistic perspective as a factor in the seriousness of the offense. This is addressed in more detail later in this memorandum in addressing the sentencing guidelines.

B. THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Mr. Wahab presents as a very humble and extremely mild mannered person who has no prior criminal history, has an exemplary employment record and is a person who has worked very hard to help support his young family. He is a valued caretaker for his two children, ages 6 and 2, especially since the time of his arrest in this case which caused him to lose his federal Government job with the IRS. He and his family have experienced significant financial consequences from the charges in this case as a result of his loss of federal employment.

His wife Abi is now employed full time as a nurse and it has become necessary for her to work more in recent months and for Mr. Wahab to take a more significant role in the primary care of the children since the time of his arrest. It is obvious to defense counsel that he is very close to his children, especially the oldest. Any period of time in the Bureau of Prisons would cause significant hardship to his family and would

compound the difficulties caused from his loss of employment. Defense counsel respectfully submits that a period of home detention would send the message of punishment to the public commensurate with the seriousness of his offense and at the same time allow Defendant to continue to provide primary care to his young children while hopefully working part time while serving his sentence.

2. THE NEED FOR THE SENTENCE IMPOSED:

A. TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE

Defendant submits that a sentence of probation, with a period of home confinement, would adequately promote respect for the law and provide just punishment for the offense particularly considering his lack of any criminal history and the nature and circumstances of the offense.

B. TO PROVIDE ADEQUATE DETERRENCE TO CRIMINAL CONDUCT

Defendant submits that a period of home confinement combined with his loss of employment and the burden of a felony criminal conviction for life would provide adequate deterrence to this type of criminal conduct. It is unlikely that any member of the public will draw any significant distinction to the difference between home confinement and minimum security

detention. Accordingly, we submit that the type of sentence proposed by the defense would adequately meet the needs of this sentencing factor.

### C. TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT

Counsel respectfully submits that in light of Defendant's lack of criminal history and the significant effect that this case has had on his family, it is extraordinarily unlikely that he will offend further in the future. Accordingly, it appears that this factor is negligible.

### D. TO PROVIDE THE DEFENDANT WITH NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE, OR OTHER CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE MANNER

Defendant respectfully submits that this statutory factor is not significant in this case.

### 4. THE APPLICABLE SENTENCING GUIDELINES RANGE

Defendant concedes that the base offense level is 8. Per the plea agreement, Defendant believes that the MSRP used by the Government to calculate the loss amount is wholly unrelated to any actual loss incurred by the copyright owners as a result of his offense. The MSRP is the amount that a permitted manufacturer of a DVD suggests as the eventual retail price of the DVD in a retail store. Defendant concedes that it may be reasonable to presume that a customer of his may likely have

purchased the movie from an authorized source had they not purchased it from him. In that case, the copyright holder would presumably have been paid a licensing or some other fee for authorizing the copy of the relevant work to be copied and produced. It is this amount, whatever that may be, which is reflective of any loss to the copyright owner, not the entire retail price.

The Government's position in this case that the loss to the copyright owners equals the retail price of the DVD is analogous to calculating the loss of a real estate commission to a broker as the amount of the entire sales price of the real estate transaction rather than the amount of the actual commission which he or she should have been received. If the theft of the commission resulted in a guilty finding in a federal criminal case, using the entire sales price as the amount of the 2B1.1 enhancement rather than the amount of the commission that was foregone would result in a wildly unfair guidelines enhancement which would be completely out of touch with the criminal conduct involved. Likewise, issuing a restitution order to the broker for an amount equalizing the entire real estate transaction price rather than the amount of the commission he or she lost would be wholly irrational. The Government's position to use the

entire retail price as the loss amount in this copyright infringement case is equally irrational. The loss to the copyright holders in this case is whatever amount they would have been paid in licensing fees for these DVD sales, *not* their eventual retail price.

In order for a DVD to be sold in a retail store at the MSRP, somebody has to manufacture the DVD at some cost and sell it to a distributor. The cost to Mr. Wahab from the unauthorized distributor in China was about $3.00 per DVD which represents at least some rational estimate to such a cost. Then the DVD would have to shipped to the retail store obviously at some additional cost. A retailer, say for example Walmart, would then purchase the DVD at some wholesale price from the distributor and then sell it to a customer at or near the MSRP for a profit to Walmart.

The loss to the copyright holder would be whatever the authorized manufacturer of the DVD would have paid to them for the right to legally copy the production *NOT* the price for which Walmart might eventually sell it. This loss amount to the copyright holder would *necessarily have to be* some *relatively minor fraction of the retail price*. It is wholly unfair to Defendant to use the MSRP under these circumstances because it

significantly exaggerates the copyright loss and unfairly and significantly inflates the recommended sentencing guideline range.

The Government of course bears the burden of proof by a preponderance of the evidence of the loss amount. It appears that the Government agents in this case conducted no investigation at all into the actual financial losses to the copyright holders in this case. There is no evidence regarding licensing agreements, or how they are paid for permitting or licensing the production of DVDs, or if there is any industry standard for calculating or submitting payments to them such as with industry standards for real estate commissions. Everybody knows approximately how much they pay a realtor to sell their house. But the Government has provided no evidence regarding how, or how much, these victims would have been paid had the copying of the DVDs been authorized. It is the defense position that this lack of proof fails to meet the Government's burden of proof regarding any 2B1.1 enhancement.

However, the Court may find that it may be reasonable to conclude that the foregone licensing revenues to the copyright holders are likely as much as $10,000.00 to $30,00.00. A fair estimate in this regard might cause the Court to conclude that a

4 point or so 2B1.1 increase might be appropriate and be rationally reflective of the likely copyright loss in the case. However, the Court may also determine that no 2B1.1 loss has been proven to a degree that the Court can make an informed decision as to any loss. Either conclusion would give additional support to the conclusion that probation with home confinement is appropriate in this case.

Accordingly, it is Defendant's position that an appropriate guideline calculation would be an offense level of 8 plus 2 totalling 10. Considering that at least some financial loss was likely caused to the copyright holders, the Court may wish to conclude a likely 2B1.1 loss enhancement of 4 points or so which would bear at least some rational relationship to the likely loss amounts to the copyright holders, which would make for an adjusted offense level around 14. This would be considerably more reflective of the likely actual loss amounts to the copyright victims and more reflective of the seriousness of the offense in this case. Whatever the Court determines as an offense level should of course be offset by the reduction for acceptance of responsibility.

5. ANY PERTINENT POLICY STATEMENTS ISSUED BY THE SENTENCING COMMISSION

The defense is aware of no relevant policy statements.

6. THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES AMONG DEFENDANTS WITH SIMILAR RECORDS WHO HAVE BEEN FOUND GUILTY OF SIMILAR CONDUCT.

Defendant is aware of no other similar cases factually relevant to this factor.

7. THE NEED TO PROVIDE RESTITUTION TO ANY VICTIMS OF THE OFFENSE

The plea agreement in this case contains a provision regarding restitution. It is Defendant's position that absent any proof of the likely actual loss to the copyright holders from these sales, that is, approximately what they would have collected from authorized sales from authorized manufacturers or distributors, the Court should refrain from ordering any restitution in the case given that it has no ability to calculate an appropriate restitution amount absent such proof.

For the same reason that the MSRP calculations lead to an unfairly inflated 2B1.1 calculation, any order from the Court to pay the copyright holders the MSRP amounts of the DVDs as restitution would result in an inappropriate and unfair windfall to those copyright holders from Defendant's offense because they would likely have received some small fraction of those MSRP amounts from authorized sales of these productions.

III. CONCLUSION

Defendant respectfully submits that the weight of the statutory factors in this case, as discussed above, weigh heavily in favor of a sentence of probation, with an appropriate period of home confinement, in this case. This would permit Mr. Wahab to continue to support and care for his young family who have already borne significant collateral consequences for this offense. We submit that such a sentence would also provide adequate punishment and deterrence for the offense and be an appropriate sentence under all of the circumstances and statutory factor application in this case.

Murphy & Price, LLP

_____/s/_____
J. Dennis Murphy, Jr.
1125 West Street, Suite 200
Annapolis, MD 21401
(410) 269-0880

ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of May, 2021, a copy of the foregoing was sent via CM/ECF to counsel for all other parties in the above captioned case.

_____/s/_____
J. DENNIS MURPHY, JR.